1  QUINN EMANUEL URQUHART
2     & SULLIVAN, LLP
   James R. Asperger (Bar No. 83188)
3  jimasperger@quinnemanuel.com
   865 S. Figueroa St., 10th Floor
4  Los Angeles, California 90017
   Telephone:  (213) 443-3000
5  Facsimile:  (213) 443-3100
6
7  *Attorney for Express Scripts, Inc.*
8
9  **UNITED STATES DISTRICT COURT**
   **CENTRAL DISTRICT OF CALIFORNIA**
10          **SOUTHERN DIVISION**

| | |
|---|---|
| 11 **IN RE SUBPOENAS *DUCES TECUM* AND TO TESTIFY AT DEPOSITION TO OPTUMRX, INC.** | Case No. 8:17-MC-00025 |
| 12 | |
| 13 _____ | |
| 14 **ANTHEM, INC,** | Underlying Litigation: Civil Action No. 1:16-cv-02048-ER United States District Court Southern District of New York |
| 15        Plaintiff and Counter-Defendant, | |
| 16    vs. | |
| 17 **EXPRESS SCRIPTS, INC.,** | **[DISCOVERY MATTER]** |
| 18        Defendant and Counter-Plaintiff. | **JOINT STIPULATION RE: DEFENDANT AND COUNTER-PLAINTIFF EXPRESS SCRIPTS, INC.'S MOTION TO COMPEL NON-PARTY OPTUMRX, INC. TO COMPLY WITH SUBPOENA *DUCES TECUM* AND TO TESTIFY AT DEPOSITION** |

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.    PRELIMINARY STATEMENTS ................................................................ 1

    A.   ESI's Preliminary Statement .................................................... 1

    B.   Optum's Preliminary Statement ................................................ 4

II.   THE PARTIES' JOINT REQUEST FOR TRANSFER ................................. 7

III.  ESI'S POSITION ................................................................................. 7

    A.   Information Concerning the Optum Proposal is Highly Relevant to the Litigation ..................................................................... 9

    B.   Optum Has Not Articulated Any Undue Burden ................................. 12

    C.   Claims of Competitive Harm Do Not Justify Optum's Refusal to Provide The Discovery Requested by ESI ............................................. 13

IV.   OPTUM'S POSITION ......................................................................... 14

Pursuant to Federal Rule of Civil Procedure 45 and Local Rules 45 and 37-2, Express Scripts, Inc. ("ESI"), Defendant and Counter-Plaintiff in the civil action *Anthem, Inc. v. Express Scripts, Inc.*, currently pending before Judge Ramos in the U.S. District Court for the Southern District of New York at civil action number 1:16-cv-02048-ER (the "Litigation"), and non-party OptumRx, Inc. ("Optum") submit this Joint Stipulation Regarding ESI's Motion to Compel Optum to Comply With Subpoena *Duces Tecum* and to Testify at Deposition (respectively, the "Document Subpoena" and "Deposition Subpoena," together, the "Subpoenas").

Optum refuses to produce *any documents* in response to the Document Subpoena or to provide a corporate deponent on *any topic* that may relate to internal Optum documents, analyses or deliberations, and the parties have been unable to resolve their dispute despite extensive meet and confer efforts. Optum is located in Irvine, California, and so compliance with the Document Subpoena and Deposition Subpoena is required in this judicial district, and ESI is required to file its motion to compel here. *See* Fed. R. Civ. P. 45(d)(2)(B)(i).

**ESI and Optum consent to—and affirmatively request—transfer of this matter to the Southern District of New York, pursuant to Federal Rule of Civil Procedure 45(f).**

## I.   PRELIMINARY STATEMENTS

### A.   ESI's Preliminary Statement

ESI seeks highly relevant documents and deposition testimony from third-party Optum concerning a pricing proposal (the "Optum Proposal") provided by Optum to Plaintiff Anthem, Inc. ("Anthem"), that Anthem is using to try and justify its claim for ***$14.8 billion*** in pricing reductions from ESI, which acts as Anthem's pharmacy benefit manager ("PBM").[1]   Anthem claims (erroneously) that it has a contractual right to

---

[1]   PBMs are independent business entities that serve as "intermediaries between pharmaceutical manufacturers and pharmacies on the one hand" and "health benefit providers" and other third-party

receive "competitive benchmark pricing" from ESI, and that ESI's current pricing exceeds that benchmark by more than $14.8 billion.  Having already commenced the Litigation, Anthem—in a blatant effort to manufacture support for its spurious claim—solicited a pricing proposal from Optum, which competes against ESI in the PBM services market.  Anthem has repeatedly stated in the Litigation that it intends to rely upon the Optum Proposal to support Anthem's allegations regarding "competitive benchmark pricing."  Accordingly, ESI served the Subpoenas on Optum, seeking documents and testimony concerning the Optum Proposal.

Optum was aware of the dispute between Anthem and ESI at the time it provided the Optum Proposal, and knew full well that Anthem was seeking the Optum Proposal in order to use it against ESI.  Indeed, Optum went so far as to explicitly *give Anthem permission* to use the Optum Proposal in the Litigation.  Optum's motives were clear.  Providing Anthem with the Optum Proposal would both harm a competitor (ESI) and ingratiate Optum with a potential future client (Anthem).

Having knowingly and willingly provided Anthem with a pricing proposal that was custom designed *by Anthem* for use in the Litigation, Optum is now refusing to produce *any* documents whatsoever, and, separately, prevent ESI from obtaining deposition testimony concerning Optum's internal analysis, deliberations, development and approach to the proposal it provided to Anthem.  In support of its position, Optum argues that the "marginal hypothetical relevance of such documents could not possibly outweigh the burden, expense, and potential competitive harm to Optum[,]" and "[t]estimony about such information would subject nonparty OptumRx to severe competitive harm that far outweighs the benefits of such testimony."  *See* Optum Objections and Responses to Document Subpoena at 5, 7, 8, 10, and 12, attached hereto as Exhibit 1 to the Declaration of Loughran Potter ("Potter Declaration"); Optum

---

payors on the other.  *Pharm. Care Mgmt. Ass'n. v. Rowe*, 429 F.3d 294, 298 (1st Cir. 2005).  Essentially, a PBM operates the prescription drug benefit provided by employers, insurers, governmental entities, health plans, and other third-party payors and providers of health benefits.

Objections and Responses to Deposition Subpoena at 4-9, attached hereto as Exhibit 2 to the Potter Declaration.  Optum's arguments are meritless.

*First*, the documents and testimony sought by ESI are critically relevant to this Litigation.  Anthem itself has made that clear.  Having made allegations in the Litigation about what constitutes "competitive benchmark pricing," Anthem solicited a pricing proposal from Optum that was intended to support Anthem's allegations; specified the desired form and substance of the proposal including by sending detailed "proposed" pricing terms; obtained Optum's consent to use the pricing proposal in the Litigation; and has now declared its intention to do just that.  In light of these facts— which Optum cannot dispute—the circumstances surrounding the Optum Proposal are directly relevant to the Litigation.  For example, in assessing whether or not the Optum Proposal is truly reflective of "competitive benchmark pricing," the fact-finder must take into account, amongst other things:  Optum's motives in providing the proposal; the assumptions—including any ***internal*** assumptions and analyses—that Optum relied upon in making the proposal; whether Optum ever seriously intended to contract with Anthem on the terms set forth in the proposal; and how Optum internally assessed Anthem's request for a purported proposal, and otherwise developed and assembled that proposal.  This is information that can be obtained only from Optum itself, and it will necessarily concern Optum's ***internal*** documents and testimony about its ***internal*** process and deliberations.

*Second*, Optum's "undue burden" objection fails because it has impermissibly failed to quantify, describe or discuss the details of any alleged burden imposed by the Subpoenas, presumably because there is very little burden (certainly, no undue burden) surrounding ESI's request for Optum to identify and produce a well-defined scope of documents concerning a single proposal provided to Anthem.

*Finally*, Optum's "competitive harm" argument should be rejected because Optum willingly provided Anthem with the Optum Proposal knowing full well that Anthem intended to use it against ESI in the Litigation.  If Optum were genuinely

-3-

JOINT STIPULATION RE: DEFENDANT AND COUNTER-PLAINTIFF EXPRESS SCRIPTS, INC.'S MOTION TO COMPEL NON-PARTY OPTUMRX, INC. TO COMPLY WITH SUBPOENA *DUCES TECUM* AND TO TESTIFY AT DEPOSITION

concerned about having to produce documents and testimony concerning the Optum Proposal, it should not have made an affirmative decision to insert itself into the Litigation.  Having done so, Optum cannot now seek to withhold this information on the basis of alleged competitive harm.  And in any event, any genuine competitive harm issues can be adequately addressed by designating produced documents and testimony as "Highly Confidential" under the Protective Order in the Litigation, which limits disclosure to ESI's external counsel and experts.

ESI has a clear need for—and right to—Optum's documents and testimony concerning the Optum Proposal.  ESI therefore seeks an order compelling Optum to produce documents concerning, and a Rule 30(b)(6) witness prepared to testify on, the genesis and purpose of the Optum Proposal; information provided, gathered, consulted, relied on, or used in connection with the Optum Proposal; the underlying analysis behind the Optum Proposal, including any profit and loss analyses; and drafts or earlier versions of the Optum Proposal.

### B.    Optum's Preliminary Statement

ESI already has access to all of the information it needs, both through Anthem and the deposition testimony that OptumRx has agreed to provide.  ESI cannot justify its efforts to obtain nonparty OptumRx's highly confidential commercial information, both because that information is irrelevant to the case and, alternatively, because ESI's need does not outweigh the potential harm to OptumRx.  Accordingly, the motion should be denied.

ESI seeks discovery concerning whether OptumRx's proposal to Anthem (the "OptumRx Proposal" or "Proposal") is reflective of "competitive benchmark pricing." By way of background, ESI provides PBM services to Anthem.  A dispute arose in 2015, which ripened into the underlying Litigation.  As is relevant here, Anthem claims it is not receiving the competitive benchmark pricing to which it is allegedly entitled,

which ESI denies.  Assuming that Anthem prevails on the issue of entitlement, [2] the next question is what constitutes competitive benchmark pricing.  Anthem intends to rely in part upon (i) a third-party analysis of market pricing, and (ii) two proposals Anthem obtained from ESI's competitors, OptumRx and CVS Caremark, which Anthem contends are consistent with the third-party analysis.  ESI claims the third-party analysis is flawed, and the proposals by OptumRx and CVS are not reflective of competitive benchmark pricing.

ESI seeks a broad range of documents and deposition testimony from OptumRx that ESI contends is relevant to evaluating the Proposal.  But ESI offers little in terms of substantiating a need for the requested discovery *from OptumRx*.  Documents that were shared between Anthem and OptumRx should be (and have been) obtained from Anthem, as reflected in ESI's very submissions to this Court.  Moreover, OptumRx has already agreed to produce a 30(b)(6) witness to testify about those documents and the terms of the OptumRx Proposal.

Accordingly, the real dispute here pertains to internal OptumRx documents and testimony that would reveal the processes, procedures, and analysis used by OptumRx to generate the OptumRx Proposal.  This information is not discoverable because it is highly confidential commercial information proprietary to OptumRx that is not relevant to whether the OptumRx Proposal is consistent with competitive benchmark pricing. ESI has the OptumRx Proposal.  It knows what terms OptumRx was willing to offer to Anthem.  It has the information and assumptions that Anthem provided to OptumRx used to formulate the Proposal (or can obtain that information from Anthem).  It also has the communications between OptumRx and Anthem relating to the Proposal (or can obtain that information from Anthem).  In addition, as the PBM for Anthem since 2009, ESI has access to the Anthem data that would form the basis for any proposal.  Finally,

---

[2] OptumRx takes no position on the issues of contract interpretation that form the basis for the Litigation.

as the largest PBM in the country, ESI has access to troves of information and data about the marketplace for PBM services.  In fact, it has agreed to produce its internal market analyses in the Litigation.  ESI does not need to know confidential information that OptumRx generated internally in preparing the Proposal to evaluate whether the proposal comports with the market for PBM services.

To justify its efforts to sift through OptumRx's confidential commercial information, ESI has concocted a conspiracy theory entirely devoid of merit. According to ESI, OptumRx's confidential commercial information is "highly relevant" because, with OptumRx's knowledge, Anthem allegedly solicited the OptumRx Proposal solely for use in the Litigation.  This is nothing more than a baseless and unsupportable accusation.  Neither the timing of the solicitation of the Proposal, the time period covered by the Proposal, nor the amendment to the non-disclosure agreement permitting Anthem to produce information about the Proposal even remotely suggest the existence of an illicit agreement.  They merely evidence normal business operations in which Anthem was seeking to ensure that it could obtain substitute services if its contract with ESI was terminated, and OptumRx was making efforts to win that business.

ESI makes two other arguments that are easily refuted.  First, it claims that OptumRx's "undue burden" objection fails because OptumRx has not quantified the burden.  However, when a party seeks irrelevant confidential information from a nonparty, any production of such materials constitutes an undue burden.  Finally, ESI contends that OptumRx's objection based upon competitive harm cannot be sustained because OptumRx knew that Anthem would use the OptumRx Proposal in the Litigation.  As discussed briefly above and in further detail below, this theory is meritless.  By participating in confidential negotiations with Anthem, OptumRx did not "insert" itself into the Litigation.  It responded to a request for a proposal, and nothing more.  That OptumRx provided Anthem with permission to produce materials about

that Proposal in the Litigation does not transfer the entire bid process into a sham created for purposes of the Litigation.

## II.    THE PARTIES' JOINT REQUEST FOR TRANSFER

Both OptumRx and ESI request that this Court transfer this matter to the Southern District of New York.  Under Rule 45(f), the Court "may transfer a motion under this rule to the issuing court if the person subject to the subpoena consents . . . ."  Fed. R. Civ. P. 45(f).  OptumRx is the party subject to the Subpoenas, and it consents to the transfer of ESI's motion.  The Litigation was filed in the Southern District of New York more than eighteen months ago.  That Court, and the presiding judge—Judge Edgardo Ramos—have significant knowledge of the issues and history of the Litigation.  While counsel for both ESI and OptumRx have offices in the Central District of California, (and undersigned counsel at those offices) the principal attorneys representing both ESI and OptumRx on matters related to this Litigation are in New York or Washington, D.C.

## III.    ESI'S POSITION

Anthem is relying on the Optum Proposal to try and justify its claim for $14.8 billion in pricing reductions from ESI.  Optum knew full well that Anthem wanted the Optum Proposal for precisely this purpose, and agreed to permit Anthem to use it against ESI—one of Optum's primary competitors—in the Litigation.  Having knowingly permitted the Optum Proposal to become a central issue in the Litigation, Optum now unreasonably refuses to provide any documents or meaningful deposition testimony concerning said proposal.  ESI therefore seeks an order compelling Optum to produce documents and a Rule 30(b)(6) witness prepared to testify about key topics including the genesis and purpose of the Optum Proposal; information and assumptions provided, gathered, consulted, relied on, or used in connection with the Optum Proposal; the underlying analysis behind the Optum Proposal, including any profit and loss analyses; and drafts or earlier versions of the Optum Proposal.  Specifically, ESI

seeks an order compelling Optum to produce documents responsive to the following two Requests in the Deposition Subpoena:[3]

1.      All Documents and Communications concerning or relating to any talks, discussions, correspondence, or negotiations with Anthem since December 1, 2009 regarding the provision (or potential provision) of PBM Services to Anthem, including but not limited to:

  a)      Documents and Communications concerning pricing;

  b)      Documents and Communications concerning formulary design;

  c)      Documents and Communications concerning pharmacy networks;

  d)      Documents and Communications concerning benefit design; or

  e)      Documents and Communications concerning operational or administrative services to be provided by OptumRx.

2.      All Documents and Communications concerning or relating to any formal or informal, draft or final, proposal, bid, offer or quote for the provision of PBM Services to Anthem prepared by OptumRx since December 1, 2009 (regardless of whether such proposal, bid, offer or quote was ever sent to Anthem), including but not limited to:

  (a)      Documents and Communications concerning any formal or informal request for such proposal, bid, offer or quote made by Anthem;

  (b)      Documents and Communications concerning the use or potential use of such proposal, bid, offer or quote by Anthem, including but not limited to its use in negotiations with ESI, or in the Anthem Suit;

  (c)      Studies, reports, work product, or other analyses created or performed by or on behalf of OptumRx in preparing or formulating such proposal, bid, offer or quote;

  (d)      Information provided by Anthem that was considered, consulted or relied upon by OptumRx in preparing or formulating such proposal, bid, offer or quote;

  (e)      Data, studies, reports, analyses, or other information considered, consulted or relied upon by OptumRx in preparing or formulating such proposal, bid, offer or quote;

---

[3]  Although ESI's original Document Subpoena was reasonable and proportional to the needs of the Litigation, ESI nonetheless agreed to further narrow the scope of its motion to compel to Requests 1 and 2, and to narrow the requested date range to January 2015 through March 2017.

(f)     Studies, reports, work product or other analyses that compared PBM Services provided to Anthem by ESI with PBM Services to be provided by OptumRx as part of such proposal, bid, offer or quote;

(g)     Documents and Communications concerning the October 2016 Offer;[4] or

(h)     Communications involving Brian Griffin, Deepti Jain, and/or Mark Thierer.

ESI further seeks an order compelling Optum to provide a 30(b)(6) witness on the following topic:

The Optum Proposals; including but not limited to (i) their genesis; (ii) Optum's understanding of the purpose and use of the Optum Proposals; (iii) communications with Anthem regarding the Optum Proposals; (iv) any information or assumptions provided, gathered, relied on, or used in connection with the Optum Proposals; (v) the reasons why Optum provided the Optum Proposals, including any perceived or actual benefits to Optum; (vi) the underlying analysis behind the Optum Proposals, including any analysis concerning Optum's profit or loss associated with the Optum Proposals; and (vii) drafts or earlier versions of the Optum Proposals, specifically how those differed from the final proposals and whether Anthem requested any changes.

Optum opposes production on the basis that the information sought is entirely irrelevant to the Litigation; and that to the extent it has limited relevance, such relevance is outweighed by the burden and competitive harm that would be suffered by Optum.   Optum further opposes making a corporate witness available to provide complete testimony about the Optum Proposal because Optum will not "disclose highly-confidential, proprietary, commercially sensitive, and/or trade secret information of OptumRx." *See* Objections and Responses to Deposition Subpoena at 4-8.  Each of these arguments is meritless, for the reasons that follow.

A.     **Information Concerning the Optum Proposal is Highly Relevant to the Litigation**

The "scope of discovery through a [Rule 45] subpoena is the same as that applicable to Rule 34 and other discovery rules."   Fed. R. Civ. P. 45, Advisory

---

[4]  The Document Subpoena defines the October 2016 Offer as the proposal, bid, offer or quote for the provision of PBM Services provided by OptumRx to Anthem in or around October 2016.

-9-

JOINT STIPULATION RE: DEFENDANT AND COUNTER-PLAINTIFF EXPRESS SCRIPTS, INC.'S MOTION TO COMPEL NON-PARTY OPTUMRX, INC. TO COMPLY WITH SUBPOENA *DUCES TECUM* AND TO TESTIFY AT DEPOSITION

Committee Note (1970).  Under Rules 34 and 30, which govern the production of documents and depositions, respectively, the proper scope of discovery is as specified in Rule 26(b).  *See Francis v. Bryant*, CVF-045077-AWISMSP, 2006 WL 1627917, at *2 (E.D. Cal. June 7, 2006) (quoting *Heat & Control, Inc. v. Hester Indus., Inc.,* 785 F.2d 1017 (Fed. Cir. 1986) ("Rule 45[] must be read in light of Rule 26(b)")); *Exxon Shipping Co. v. U.S. Dep't of Interior,* 34 F.3d 774, 779 (9th Cir. 1994) (applying Rule 26 and Rule 45 standards to rule on a motion to quash subpoena).  Rule 26(b) permits the discovery of any non-privileged matter "relevant to any party's claim or defense and proportional to the needs of the case," and specifies that "[i]nformation within the scope of discovery need not be admissible in evidence to be discoverable."  Relevance is defined broadly for discovery purposes.  *U.S. v. McGraw-Hill Cos., Inc.*, CV 13-779-DOC JCGX, 2014 WL 1647385, at *8 (C.D. Cal. Apr. 15, 2014) (*Garneau v. City of Seattle,* 147 F.3d 802, 812 (9th Cir. 1998)).

There can be no dispute that the Optum Proposal itself is highly relevant to the Litigation, because Anthem has affirmatively stated that it intends to rely upon the Optum Proposal to substantiate its claim against ESI for $14.8 billion in pricing reductions.  Specifically, Anthem—which erroneously claims to be entitled to "competitive benchmark pricing" under its contract with ESI—intends to argue that the Optum Proposal reflects "competitive benchmark pricing" in the market for PBM services, because it reflects a genuine, binding offer to provide Anthem with PBM services for the prices reflected therein.

Given Anthem's position, the circumstances surrounding the Optum Proposal are highly relevant to the Litigation.  This is especially true given the evidence suggesting that the Optum Proposal was less a genuine pricing proposal and more an attempt by Anthem to manufacture evidence to support its case.  For example, Anthem actively solicited the Optum Proposal from Optum nearly five months *after* the Litigation began.  *See* Email from J. Petronzi to J. Grosklags, Sept. 9, 2016, attached hereto as Exhibit 3 to the Potter Declaration (showing first time Anthem sent proposal-related

-10-

information to Optum).  Moreover, rather than asking Optum to provide it with a competitive bid (which is the common practice in a competitive bidding process), Anthem instead provided Optum with the specific pricing that Anthem wanted Optum to include.  *See id.* ("[a]ttached are the materials, including proposed terms/definitions as well as a separate schedule documenting the detailed proposed pricing ...").  The transparent nature of Anthem's solicitation and Optum's proposal are further supported by the "coincidental" time period covered by the Optum Proposal.  Although dated and executed December 29, 2016, the Optum Proposal contains *backward* looking pricing terms for 2016, that Anthem has now seized upon in the Litigation to fault ESI's pricing.  Further still, the Optum Proposal provides pricing through only 2019, which, conveniently, happens to be when the PBM agreement between Anthem and ESI comes to an end.  Finally, the Optum Proposal states, on its face, that it is *non*-binding, yet Anthem has suggested otherwise in the Litigation.

In light of these facts, ESI is entitled to discovery (indeed, ESI very much *needs* discovery) to uncover and unpack the precise contours of the Optum Proposal; how, if at all, it relates to purported "competitive benchmark pricing"; and whether it constitutes  a genuine bid to contract on the terms reflected therein, or rather merely a stalking-horse bid that was intended to be used against ESI in the Litigation.

Moreover, even if the Optum Proposal was a genuine bid (which ESI seriously doubts), ESI would still be entitled to the discovery it seeks in order to determine whether that bid provides a true "apples-to-apples" benchmark that can be meaningfully compared to the pricing provided by ESI under its contract with Anthem.  For example, was the Optum Proposal based on realistic assumptions regarding the number of claims that Anthem could provide, as well as the specific formularies and pharmacy networks that Anthem would agree to?  How was Optum generating the precise pricing terms it was proposing?  Was Optum assuming that it would need to provide all of the same services currently provided by ESI?  Was Optum factoring in the nearly $5 billion in upfront money that ESI was required to pay Anthem as part of the deal for ESI's PBM

-11-

services contract?  Was Optum counting on any offsetting, ancillary agreements with Anthem such that Optum could offer lower pricing terms as part of its proposal?  What were Optum's long term projections about its proposal, especially since Optum's proposal was *non*-binding?  The documents and testimony sought by ESI—which can only be obtained from Optum itself—are directly relevant to these critical issues.

Optum's partial concession to provide deposition testimony (yet still no documents) on some of these topics, provided ESI does not inquire into any internal information or analyses, is far from sufficient.  ESI has to have the opportunity to obtain complete discovery from Optum, in order to fully defend itself against Anthem in the Litigation.

### B.    Optum Has Not Articulated Any Undue Burden

Consistent with Rule 45, ESI has taken reasonable steps to avoid imposing undue burden or expense on Optum.  *See* Fed. R. Civ. P. 45(d)(1).  Specifically, ESI repeatedly offered to reimburse Optum for reasonable compliance costs.  And, as referenced above, ESI offered to narrow the scope of the Document Subpoena to only two of the six requests (Requests 1 and 2).  In response, Optum has failed to provide any details concerning its alleged burden, has made no suggestions as to what additional concessions it believes are necessary, and has refused even to discuss reimbursement.  Optum's burden objection should therefore be rejected.  *See Sullivan v. Personalized Media Commun., LLC*, 16-MC-80183-MEJ, 2016 WL 5109994, at *3 (N.D. Cal. Sept. 21, 2016) (denying non-party motion to quash subpoena and noting "[c]onclusory or speculative statements of harm, inconvenience, or expense are plainly insufficient[.]") (internal quotation omitted);  *see also Probulk Carriers Ltd. v. Marvel Int'l Mgmt. and Transp.*, 180 F. Supp. 3d 290 (S.D.N.Y. 2016) (refusing to quash Rule 45 subpoena in part because claims of undue burden were entirely conclusory).  Even if the Subpoenas did impose some burden upon Optum—which Optum has never established—such burden would not be sufficient to sustain Optum's objection given the critical relevance of the information sought by ESI.  *See Amini Innovation Corp. v.*

-12-

*McFerran Home Furnishings, Inc.*, 300 F.R.D. 406, 409–10 (C.D. Cal. 2014) (noting that burden must be weighed against the importance of the information sought by the requesting party).

    **C.**    **Claims of Competitive Harm Do Not Justify Optum's Refusal to Provide The Discovery Requested by ESI**

As a threshold matter, Optum's competitive harm argument should be rejected because Optum made a conscious decision to inject itself and its pricing into the Litigation. At the time Anthem solicited a bid from Optum, Optum knew full well that Anthem intended to use the bid in the Litigation. Indeed, Optum went so far as to execute a non-disclosure agreement with Anthem that explicitly permitted Anthem to produce the Optum Proposal in the Litigation pursuant to the existing Protective Order (thereby facilitating its use by Anthem). *See* First Amendment to Mutual Non-Disclosure Agreement dated October 6, 2016, attached hereto as Exhibit 4 to the Potter Declaration, § 1 (stating that information related to the Optum Proposal "may be produced in the Litigation[] on a confidential basis") (the "Revised NDA").[5] Having made the decision to provide pricing information to Anthem in a form that was designed to be used against ESI in the Litigation, Optum cannot now object to producing documents and testimony concerning the Optum Proposal—including internal Optum documents and analyses and testimony regarding internal Optum documents, analyses and deliberations—on the basis that it concerns commercially sensitive pricing information. That ship has sailed.

Optum's competitive harm claims should also be rejected because it has failed to specify what competitive harm it would suffer. ESI's Subpoenas do not seek production of Optum's general pricing, or indeed Optum's pricing for any specific client. Rather, the Subpoenas are narrowly tailored to seek information concerning

---

[5]   Anthem has not yet produced an executed version of the Revised NDA, but an email produced by Anthem shows that the Revised NDA was executed on the morning of October 9, 2016. *See* Email from M. Thierer to D. Jain, Oct. 9, 2016, attached hereto as Exhibit 5 to the Potter Declaration ("Thank you for working with us to get the amended NDA executed this morning.").

1  only the specific pricing that Optum offered to Anthem, the disclosure of which has

2  already been consented to by Optum. *See* Revised Non-Disclosure Agreement dated

3  October 6, 2016, § 1.  Moreover, to the extent Optum has any genuine competitive

4  harm concerns, they can be adequately addressed by designating produced documents

5  and testimony as "Highly Confidential" under the Protective Order in the Litigation,

6  which limits disclosure to ESI's external counsel and experts.

7  **IV.   OPTUM'S POSITION**

8       ESI has not—and cannot—demonstrate a sufficient need for internal OptumRx

9  information about the OptumRx Proposal that OptumRx did not share with Anthem.

10  These documents are highly confidential, and their production to ESI would reveal

11  OptumRx's internal processes, procedures, data and analysis for formulating proposals

12  to provide the very same services as ESI.    Between the documents that ESI has

13  obtained (and can obtain) from Anthem, and the deposition testimony that OptumRx

14  has offered to provide, ESI has more than sufficient discovery, particularly at this stage.

15       OptumRx is not a party to the Litigation, so any discovery requests to OptumRx

16  "should be narrowly drawn to meet specific needs for information."  *Convolve, Inc. v.*

17  *Dell, Inc.*, 2011 U.S. Dist. LEXIS 53641, at *2 (N.D. Cal. May 9, 2011);; *see also Dart*

18  *Industries Co., Inc. v. Westwood Chemical Co.*, 649 F.2d 646, 649 (9th Cir. 1980)

19  (noting that when a nonparty "is the target of discovery," restrictions on discovery

20  "may be broader.").  ESI has not done so here. Even as narrowed by ESI, the Document

21  Subpoena still seeks thirteen categories of documents, which encompass essentially all

22  documents and communications having anything to do with the OptumRx Proposal.

23  *See supra*, at p. 8.  OptumRx objected on multiple grounds, including (1) that any

24  relevant documents in Anthem's possession should be obtained from Anthem, (2) that

25  documents not shared with Anthem are irrelevant, and (3) alternatively, that any

26  hypothetical marginal relevance of documents that were never sent to Anthem could not

27  outweigh the burden, expense and potential competitive harm to OptumRx.  *See* Potter

28  Declaration, Ex. 1 (Objections and Responses to Document Subpoena).  Based on these

objections—including that all of the potentially relevant documents would be in Anthem's possession—OptumRx did not agree to produce any documents in response to the Document Subpoena.

The Deposition Subpoena seeks testimony about a variety of topics related to the OptumRx Proposal. *See generally*, Potter Declaration, Ex. 2 (OptumRx Objections and Responses to Deposition Subpoena). OptumRx objected on multiple grounds, stating that it would not permit a witness to testify about (i) the underlying analyses behind the OptumRx Proposal, including any analysis of the associated profit or loss, (ii) drafts or earlier versions of the OptumRx Proposal, and (iii) highly-confidential, proprietary, commercially sensitive, and/or trade secret information of OptumRx. *Id.* OptumRx responded that it would permit a witness to answer questions concerning the OptumRx Proposal, including: (i) how and when the negotiation process began; (ii) OptumRx's understanding of the purpose of the Proposal and Anthem's use of the Proposal; (iii) the nature of the communications with Anthem regarding the Proposal; (iv) the information and assumptions provided by Anthem used in preparing the Proposal; and (v) why OptumRx provided the Proposal, including the general benefits that OptumRx believed it would have gained if the Proposal were accepted. *See id.* Accordingly, OptumRx has already offered to provide more than sufficient testimony about the OptumRx Proposal.

**A.    Relevant Documents About the OptumRx Proposal Should be Obtained from Anthem, and Internal Highly Confidential OptumRx Information Not Shared with Anthem is Not Discoverable.**

ESI's motion should be denied to the extent it seeks information from OptumRx that was exchanged with Anthem; namely, the OptumRx Proposal and related communications between OptumRx and Anthem. Even if these documents are discoverable under Rule 26(b)(1), that alone is insufficient to require production by OptumRx because such discovery can be obtained from Anthem. *See* Fed. R. Civ. P. 26(b)(2)(C)(i) ("the court must limit the . . . extent of discovery otherwise allowed by these rules . . . if it determines that: (i) the discovery sought is unreasonably cumulative

-15-

or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive"). Indeed, when information sought from a nonparty is obtainable from a party, it is proper to limit discovery from the nonparty. *See, e.g., Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*, 300 F.R.D. 406, 410 (C.D. Cal. 2014) ("[a] court may prohibit a party from obtaining discovery from a non-party if that same information is available from another party to the litigation.") (citation and quotation marks omitted); *Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 577 (N.D. Cal. 2007) (quashing subpoena that sought information that was "obtainable from a source more direct, convenient, and less burdensome—namely, from Defendants"). Here, the relevant documents concerning the OptumRx Proposal are obtainable from Anthem, as demonstrated by ESI's own submission to this Court, which attaches documents regarding the OptumRx Proposal that ESI obtained from Anthem.

ESI's motion also should be denied to the extent it seeks internal information about the OptumRx Proposal. Such information is beyond the scope of allowable discovery for multiple reasons. To begin, these documents are entirely irrelevant to the issue of whether the OptumRx Proposal is reflective of competitive benchmark pricing, which focuses on the pricing available in the marketplace, not how or why a particular service provider determines to offer such pricing. ESI itself has defined "competitive benchmark pricing" as "pricing that is commercially available in the marketplace to similarly situated customers for similar products and services, taking into account difference between those customers, products, and services."[6] The internal processes, procedures, and analysis utilized by OptumRx to formulate the Proposal do not shed any light on this definition, which focuses on the pricing, products and the customers.

---

[6] Declaration of Jonathan Montcalm ("Montcalm Decl.") Ex. A, (Transcript of April 26, 2017 Hearing on Discovery Dispute in the Litigation, Case No. 1:16-cv-02048-ER (S.D.N.Y.) [ECF No. 69]) ("4/26/17 Hearing Tr.") at 10:1-11.

Next, even if OptumRx's internal documents could further inform whether the Proposal is consistent with competitive benchmark pricing, that information would still not be discoverable because it is unreasonably cumulative. *See* Fed. R. Civ. P. 26(b)(2)(C)(i). ESI already has the OptumRx Proposal. It knows what services OptumRx was offering and at what prices. It also has all of the inputs provided to OptumRx by Anthem for use in formulating the Proposal (or can obtain them from Anthem). It also has all of its own data about servicing Anthem since 2009, as well as other market data that it has agreed to produce[7] and which it undoubtedly possesses given that it is the largest PBM in the country. Moreover, OptumRx has already agreed to produce a witness to testify about the OptumRx Proposal, including the process that led to it, the assumptions Anthem asked OptumRx to use in preparing it, and the reasons why OptumRx provided it. Requiring any more discovery from OptumRx would add nothing.

Alternatively, even if OptumRx's internal information had some relevance, it still would not be discoverable because the potential harm to OptumRx outweighs any alleged benefit to ESI. When conducting the balancing test under Rule 45, the "unwanted burden thrust upon non-parties . . . is a factor entitled to special weight . . . ." *Amini Innovation Corp.*, 300 F.R.D. at 409 (citation and quotation marks omitted). The balance tips further in favor of a nonparty where, as here, the discovery sought is confidential commercial information. *See* Fed. R. Civ. P. 45(d)(3)(B)(i) (a court may modify or quash a subpoena if it requires "disclosing . . . confidential research, development, or commercial information"); *Monterey Bay Military Hous., LLC v. Pinnacle Monterey LLC*, 2015 U.S. Dist. LEXIS 45527, at *9 (N.D. Cal. Apr. 7, 2015) (denying motion to compel production of confidential business information where party

---

[7] Montcalm Decl. Ex. A, 4/26/17 Hearing Tr., 24:24-25:6 (ESI's counsel states that ESI has "agreed to produce all internal studies, reports, analyses, assessments concerning competitive pricing, competitive benchmark pricing, market pricing, benchmark pricing, and the market for PBM insurance").

-17-

seeking discovery failed to demonstrate a substantial need for that information).  And where, as here, that confidential commercial information is sought from a direct competitor, the balance should further favor the nonparty.  *Cf. Waymo LLC v. Uber Techs., Inc.*, 2017 U.S. Dist. LEXIS 132721, at *11 (N.D. Cal. Aug. 18, 2017) (quashing subpoena to nonparty competitor where defendant failed to show a substantial need for that information).

OptumRx's processes and procedures for formulating proposals for the provision of PBM services are highly confidential, and result in the creation of sensitive information proprietary to OptumRx, including internal deliberations, communications, and analyses.  Declaration of Michael F. Edwards, ("Edwards Decl.") ¶ 5.  OptumRx does not disclose to third parties these internal processes and procedures, nor the sensitive proprietary information created through their implementation. In particular, OptumRx does not disclose this information to either potential clients or competitors. *Id.* ¶ 6.  Accordingly, to tip the balance in its favor, ESI must demonstrate a substantial need for OptumRx's internal documents about the Proposal that cannot otherwise be met without undue hardship.  *See*, *e.g.*, *Monterey Bay*, 2015 U.S. Dist. LEXIS 45527, at *9.  It has failed to do so.

ESI bases its entire effort to establish a need for OptumRx's internal documents on an outlandish theory that OptumRx only provided the Proposal to assist Anthem in manufacturing evidence in the Litigation.   As evidence of this alleged illicit undertaking, ESI relies on three pieces of information: (i) that Anthem solicited the Proposal after the Litigation had commenced; (ii) that the OptumRx Proposal covered the same time period remaining in the Agreement between Anthem and ESI; and (iii) that OptumRx expressly agreed to permit Anthem to use the OptumRx Proposal in the Litigation.  None of these facts support ESI's theory.

*First*, that Anthem allegedly solicited the Proposal from OptumRx after the Litigation commenced does not cast a pall on the solicitation.  In the Litigation, Anthem seeks a declaration terminating its Agreement with ESI.  If Anthem were to

-18-

succeed, it would need to be prepared to substitute a different PBM. That is why Anthem sought the proposal from OptumRx. *See* Edwards Decl. ¶ 3 ("During those discussions, OptumRx understood that Anthem was engaged in a dispute with [ESI], and that Anthem was seeking bids for the provision of PBM services in the event that its contract with ESI was terminated."). OptumRx was merely attempting to win new business, and nothing more.

*Second*, the OptumRx Proposal covered the same time period as that remaining on the Anthem/ESI Agreement *because* Anthem was seeking bids to replace ESI in the event its contract with ESI was terminated. *See* Edwards Decl. ¶ 3. The OptumRx Proposal provides terms through 2019 because ESI was supposed to provide PBM services to Anthem through 2019. This does not mean that Anthem and ESI manufactured the Proposal solely for the Litigation. It means that Anthem was seeking proposals in case it had to replace ESI.

*Third*, the amendment to the non-disclosure agreement between OptumRx and Anthem does not constitute OptumRx inserting itself into the Litigation nor indicate that its Proposal was not genuine. As is customary for OptumRx when discussing a potential business relationship, Anthem and OptumRx executed an NDA. Edwards Decl. ¶ 4. After the Litigation had commenced, and after ESI had served its document requests to Anthem in May 2016,[8] the NDA was amended to permit Anthem to produce information regarding its discussions with OptumRx, *see* Edwards Decl. ¶ 4. ESI undoubtedly requested information from Anthem regarding any discussions with ESI's competitors, and the NDA amendment made it possible for Anthem to produce those documents without requiring a court order. The NDA amendment was nothing more than a required step to allow Anthem to produce documents *requested by ESI* in the Litigation.

---

[8] Montcalm Decl., Ex. B (Civil Case Discovery Plan and Scheduling Order, Case No. 1:16-cv-02048-ER (S.D.N.Y.) [ECF No. 30]) ¶ 6 (noting that first requests for the production of documents were to be served on or after May 25, 2016).

1    In sum, ESI has failed to establish its entitlement to internal OptumRx

2 information about the OptumRx Proposal that was not shared with Anthem.  The

3 information is highly confidential, and the only need proffered by ESI is based on

4 unsupported accusations.  Any relevant documents can and should be obtained from

5 Anthem.

6       **B.    Requiring the Production of Highly Confidential Internal OptumRx Information Would Impose an Undue Burden.**

7

8       ESI argues that OptumRx has failed to articulate any undue burden associated

9 with responding to the Subpoenas because it has not provided details about the burden

10 and has not engaged in discussions regarding potential reimbursement by ESI.  This

11 contention misses the mark.  Where, as here, information beyond the scope of allowable

12 discovery is sought, compelling the production of such discovery by a nonparty

13 "necessarily imposes an undue burden or expense." *Rodriguez v. El Toro Med. Inv'rs*

14 *P'ship*, 2017 U.S. Dist. LEXIS 76615, at *7 (C.D. Cal. May 11, 2017) (citations

15 omitted).  OptumRx has consistently maintained its position that it should not have to

16 produce documents that ESI can obtain from Anthem, nor should it have to produce

17 internal confidential documents and related testimony because such discovery is

18 irrelevant, and would subject OptumRx to severe competitive harm.  In other words, the

19 very act of producing irrelevant documents, particularly when the production of those

20 documents would subject OptumRx to competitive harm, imposes an undue burden.  It

21 is thus irrelevant that OptumRx has not articulated a specific dollar cost or provided

22 specific details about the financial burden that would be associated with such

23 production.

24       **C.    The Competitive Harm that Would Befall OptumRx Justifies OptumRx's Objections to Producing Internal Highly Confidential Information.**

25

26       In further reliance on its meritless contention that OptumRx only provided the

27 OptumRx Proposal for use in the Litigation, ESI argues that OptumRx cannot rely on

28 claims of competitive harm.  As discussed above, ESI's theory is baseless.  Anthem and

-20-

1   OptumRx amended their NDA to permit the production by Anthem of documents
2   pertaining to the OptumRx Proposal because those documents were relevant to the
3   Litigation (and undoubtedly requested by ESI).   That OptumRx was aware of the
4   Litigation does not mean that OptumRx has opened itself up to all manner of discovery
5   into its internal processes for formulating bids.  A potential client sought a proposal
6   from OptumRx, and OptumRx provided that Proposal.  The existence of the Litigation
7   at the same time these discussions were taking place does not transform these routine
8   business activities into evidence of a conspiracy to manufacture evidence.  ESI must
9   demonstrate a greater need for OptumRx's highly confidential documents to overcome
10  the harm associated with disclosure of those documents. *See*, *e.g.*, *Monterey Bay*, 2015
11  U.S. Dist. LEXIS 45527, at *9.
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1   Dated:  October 27, 2017                    Respectfully submitted,

2                                               QUINN EMANUEL URQUHART &
3                                               SULLIVAN LLP

4

5                                               By /s/ James R. Asperger
                                                   James R. Asperger (Bar No. 083188)
6                                                  jimasperger@quinnemanuel.com
7                                                  865 S. Figueroa St., 10th Floor
                                                   Los Angeles, California 90017
8                                                  Telephone:  (213) 443-3000
                                                   Facsimile:   (213) 443-3100
9                                                  *Attorney for Express Scripts, Inc.*
10

11

12  Dated:  October 27, 2017                    Respectfully submitted,
13                                               DORSEY WHITNEY LLP
14

15

16                                              By /s/ Bryan M. McGarry
                                                   Bryan M. McGarry
17                                                 C.A. Bar No. 258156
18                                                 600 Anton Boulevard, Suite 2000
                                                   Costa Mesa, California 92626
19                                                 Telephone: (714) 800-1430
                                                   Facsimile: (714) 800-1499
20                                                 *Attorney for Non-Party OptumRx, Inc.*

21

22  **C.D. Cal. L. R. 5-4.3.4(a)(2) Attestation**

23  Pursuant to Local Rule 5-4.3.4(a)(2), I attest that all other signatories listed, and on

24  whose behalf the filing is submitted, concur in the filing's content and have

25  authorized the filing.

26                                                  /s/ James R. Asperger
                                                      James R. Asperger
27

28

-22-